TRACY REEVE, Oregon State Bar ID Number 891123
City Attorney
Email:  Tracy.Reeve@portlandoregon.gov
J. SCOTT MOEDE, Oregon State Bar ID Number 934816
Chief Deputy City Attorney
Email:  Scott.Moede@portlandoregon.gov
Kenneth A. McGair, Oregon State Bar ID Number 990148
Senior Deputy City Attorney
Email:  Ken.McGair@portlandoregon.gov
Office of City Attorney
1221 SW Fourth Avenue, Room 430
Portland, OR  97204
Tele:  503-823-4047
Fax:  503-823-3089
*Of Attorneys for Plaintiff City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **CITY OF PORTLAND,** a municipal corporation of the State of Oregon, | **3:14-cv-01958-SI** |
| **PLAINTIFF,** | **PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| **UBER TECHNOLOGIES, INC.,** a Delaware corporation, and **RASIER, LLC,** its wholly owned subsidiary, | Request for Oral Argument Expedited Hearing Requested |
| **DEFENDANTS.** | |

## Certificate of Compliance

Pursuant to Local Rule 7.1, plaintiff has made a good faith effort through telephone

conferences and correspondence to resolve the disputed matters, and has been unable to do so.

//////

Page  1 –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

## Motion

Pursuant to FRCP 65 and ORS 30.315(1)(d) and (e), Portland City Charter 1-103, ORS 28.010, ORS 28.020, and Portland City Code Chapter 16.40, plaintiff City of Portland respectfully moves this Court for an order temporarily restraining and/or preliminarily enjoining defendants Uber Technologies, Inc. and its wholly owned subsidiary Rasier, LLC (collectively "Uber") from conducting business (by operating a for-hire vehicle or company, receiving money or other compensation from the use of a for-hire vehicle, causing or allowing another person to do the same or advertising the same, PCC 16.40.030 J)[1] or operating (by driving a for-hire vehicle, using a for-hire vehicle to conduct a business, receiving money from the use of a for-hire vehicle or causing or allowing another person to do the same, PCC 16.40.030 Y) within the City of Portland, Oregon, including through the use of the Uber smartphone application and contracts with unpermitted drivers, unless and until Uber comes into compliance with the permit, insurance and other requirements of Portland City Code Chapter 16.40 (Private For-Hire Transportation Regulations). A temporary restraining order or preliminary injunction is needed to preserve the status quo and protect the public from the risks arising from the operation of unpermitted private for-hire transportation services in contravention of City regulations until the Court can be given an opportunity to decide these claims on the merits.

This motion is supported by the following memorandum of law, affidavits, declaration and exhibits filed contemporaneously with this Motion.

## Memorandum of Law

On the evening of Friday, December 5, 2014, defendant Uber Technologies, Inc. and its wholly owned subsidiary Rasier, LLC (collectively "Uber") announced the "launch" of Uber for-hire transportation services in the City of Portland. (See Affidavit of Frank Dufay ("Dufay Aff."), ¶ 3; Declaration of Rachael Wiggins ("Wiggins Decl."), Ex. A; Declaration of Tara

---

[1] PCC 16.40 is attached to the Affidavit of Tracy Reeve, filed herewith, as Exhibit A.

Page  2  –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Khoshbin ("Khoshbin Decl."), Ex. A.)  Uber freely admits that it is operating in the City of

Portland without obtaining permits under or otherwise complying with City's Private For-Hire

Transportation regulations.  (Wiggins Decl., Ex. A; Dufay Aff., Ex. C.)  The City has also

documented that Uber is providing for-hire transportation:  City representatives have used the

Uber application to secure for-hire transportation from Uber drivers in Portland.  (Dufay Aff.

¶¶ 10-17; Declaration of Nena Baker ("Baker Decl."), ¶¶ 2-18; Affidavit of Erich England

("England Aff."), ¶¶ 11-15.)  The City issued a Cease and Desist letter and filed suit in

Multnomah County Circuit Court on Monday, December 8, 2014, to enforce its regulations and

enjoin Uber's operations, and gave notice that same day of its intent to appear ex parte (on

December 9, 2014) to seek an order to show cause why a preliminary injunction should not issue.

(See Affidavit of Tracy Reeve ("Reeve Aff."), Exhibit H.)  Uber filed its removal petition

(alleging diversity jurisdiction) also on December 8, 2014 (Doc. 1).

## I.    Statement of the Case

The Oregon legislature has recognized that the safety and reliability of vehicles for-hire

are matters of public concern and that the regulation of such vehicles is an essential government

function.  ORS 221.485.  The State Legislative Assembly has expressly delegated to cities and

counties the authority to "license, control and regulate privately owned . . . vehicles for hire that

operate within their respective jurisdictions."  ORS 221.495.  This authority includes regulating

entry into the business; requiring a license or permit as a condition for operation of vehicles for

hire; controlling the rates charged and manner in which rates are collected and calculated;

regulating routes; establishing safety, equipment and insurance requirements; and establishing

any other requirements necessary to assure safe and reliable service by such vehicles.  ORS

221.495(1)-(6).

//////

//////

Page  3  –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

The City of Portland fulfills this essential governmental function through Portland City Code Chapter 16.40 (Reeve Aff., Exhibit A, Private For-Hire Transportation).[2]  "[P]roviding vehicular . . . transportation for compensation of any kind within the Portland City Limits" constitutes Private For-Hire Transportation so as to be within the scope of the City's regulations. PCC 16.40.030 HH.[3]

The purpose of Chapter 16.40 "is to provide for the safe, fair and efficient operation of private 'for-hire' transportation services."  PCC 16.40.010.  The City has determined that "[t]he industry should be allowed to operate without unnecessary restraint," but also that "because transportation so fundamentally affects the City's wellbeing and that of its citizens, some regulation is necessary to insure that the public safety is protected, the public need provided and the public convenience promoted."  *Id.*

The requirements of PCC Chapter 16.40 apply to all companies, vehicles and drivers conducting business in the City, whether or not legally permitted.  PCC 16.40.020.  (Dufay Aff., ¶¶ 4, 8.)  "'Conduct[ing] Business' means operating a for-hire vehicle or company, receiving money or other compensation from the use of a for-hire vehicle, causing or allowing another person to do the same, or advertising the same."  PCC 16.40.030 J.  "Operate" means "driving a for-hire vehicle, using a for-hire vehicle to conduct a business, receiving money from the use of a for-hire vehicle, or causing or allowing another person to do the same."  PCC 16.40.030 Y.

Under the City's regulatory scheme, no person may drive a private for-hire transportation vehicle without a valid, current for-hire transportation driver's permit.  PCC 16.40.090 A.

//////

//////

---

[2] http://www.portlandonline.com/auditor/index.cfm?c=28593#cid_502545.
[3] The exception for "transportation provided by a public or governmental entity, transportation that is regulated entirely by the State of Oregon or the federal government" is inapplicable to Uber's operations.

"Private for-hire vehicle" includes any vehicle, motorized or non-motorized, used to transport persons for-hire or other consideration.  PCC 16.40.090 II.[4]

In addition, all for-hire transportation companies are required to obtain a permit to operate.  PCC 16.40.020 A, PCC 16.40.130 A, and PCC 16.40.150 A.  All for-hire transportation companies must also obtain, comply with and maintain minimum levels of insurance to protect the public.  PCC 16.40.410.  The City also has generally applicable regulations pertaining to driver background checks, conduct and maximum work hours; the renewal of company permits; financial information; reporting obligations; vehicle inspection; and the licensing and maintenance of vehicles and required safety equipment.  *See, e.g.,* PCC 16.40.090-170.  The City also requires that at least 20% of a company's taxicabs be wheelchair accessible.  PCC 16.40.300.  Further, the City has a variety of regulations pertaining to minimum standards of service, metering, fare setting and rates.  PCC 16.40.270; 16.40.290; 16.40.310; 16.40.470 and 16.40.480.

Defendant Uber Technologies, Inc. is a technology company and defendant Rasier, LLC is its wholly owned subsidiary (hereafter collectively "Uber").  Uber offers a smartphone based application which enables potential passengers to connect with Uber drivers for hire.[5]  (Dufay Aff., ¶ 28.)  Members of the public can download the application and register with Uber by entering certain identifying information including a credit card number.  *Id.*  Potential passengers activate the application when they wish to access private for-hire transportation services.  *Id.*  Once the application is activated, the potential passenger enters her location and the application finds one or more Uber drivers within a certain radius.  *Id.*  The potential passenger can then request that an Uber driver pick her up at that location.  *Id.*  Uber drivers also use smartphones

---

[4] The exceptions to this definition, which are not applicable here, are vehicles exclusively regulated by the state and school buses, charter buses and ambulances.
[5] Uber solicits and contracts with these drivers.  From November 4, 2014, through December 8, 2014, Craigslist for the Portland area showed 677 Uber ads for drivers.  (Reeve Aff., ¶9, Ex. G.)

Page  5  –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

(issued to the drivers by Uber) which notify the driver when a potential passenger wishes to access for-hire transportation.  *Id.*  The driver accepts the request and is then effectively dispatched via the software platform to the address of the passenger.  *Id.*  The passenger is sent a picture of the driver, along with a picture of the vehicle en route and its license number.  *Id.* Payment is made through the Uber application and Uber receives a percentage of the payment for the for-hire transportation.  *Id.*

Neither Uber nor its drivers have obtained the required permits to provide for-hire transportation services in the City of Portland.  (Dufay Aff., ¶¶ 5, 6, 7, 9, 10, 12, 15, 20, 43, 44.) Neither Uber nor its drivers have complied with the other legal requirements of PCC Chapter 16.40 for "providing vehicular . . . transportation for compensation of any kind within the Portland City Limits."  PCC 16.40.030 HH.  (Dufay Aff., ¶¶12, 15, 29, 37, 40, 41, 42, 43, 47, 48, 49, 51-53.  Nonetheless, beginning on December 5, 2014, and continuing, Uber has contracted with drivers to transport passengers in the City of Portland in for-hire vehicles.  (Dufay Aff., ¶ 9.)  Uber drivers have in fact transported passengers (Dufay Aff., ¶¶ 10-17; Baker Decl., ¶¶ 2-15; England Aff., ¶¶ 11-15) and Uber and Uber drivers have received or will receive compensation as a result.  (Dufay Aff., Ex. A.)

## II.    Legal Standards for Temporary Restraining Order or Preliminary Injunction

FRCP 65; ORS 30.315(d) and (e), Portland City Charter 1-103, ORS 28.010, ORS 28.020, and Portland City Code Chapter 16.40

### A.    Standards for a Temporary Restraining Order or Preliminary Injunction

As this Court has held, "[a] TRO is intended to preserve the status quo until the federal court can rule upon the application for preliminary injunction."  *Konecranes, Inc.v. Scott Sinclair,* 340 F. Supp. 2d 1126, 1128-29 (D Or. 2006).  As this Court noted there:

"The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of

Page  6  –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

hardships tips sharply in its favor. *Id.* These are not separate tests, but the outer reaches "of a single continuum." *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). Serious questions are those sufficiently substantial to warrant further consideration by the court and to present fair ground for litigation. *See Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). If the balance of hardships tips decidedly toward the plaintiff, less likelihood of success on the merits is required. *Wilson v. Watt*, 703 F.3d 395, 399 (9th Cir. 1983). The court must also consider the public interest, if applicable. *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983)." *Id.* at 1129.

"It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo *ante litem* pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 808 (9th Cir.), *cert denied,* 375 U.S. 821 (1963). As this Court has stated:

> The Ninth Circuit recognizes two different sets of criteria for injunctive relief. Under the "'traditional test,' the moving party must show: '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' "*Southeast Alaska Conservation Council v. United States Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006) (internal quote marks and citations omitted). The "'alternative test' requires that the moving party demonstrate 'either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips in [the moving party's] favor.'" *Id* (internal quote marks and citations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005) (internal quotation marks and citation omitted).

*Pulse Technologies, Inc. v. Dodrill,* 2007 WL 789434 *6 (D OR 2007).

//////

Page 7 –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

In addition, when as here the Court is dealing with a matter arising under state law pursuant to diversity jurisdiction, state standards governing injunctive relief should be considered and applied if outcome determinative. *Sims Snowboards, Inc. v. Kelly,* 863 F.2d 643, 645 (9th Cir. 1988).

While proof of irreparable harm is generally a prerequisite to injunctive relief under Oregon law, *see, e.g., Gildow v. Smith,* 153 Or. App. 648, 653, 957 P.2d 199 (1988), "that does not mean that the law requires state or local governments to wait until harm actually occurs before they may enjoin violations of health and safety regulations." *Josephine County v. Garnier*, 163 Or. App. 333, 336-37, 987 P.2d 1263 (1999). Rather, "[a] probable or threatened harm suffices." *Id.*, citing *McCombs et al. v. McClelland*, 223 Or. 475, 485, 354 P.2d 311 (1960). Where, as here, a party is violating health and safety regulations, the entry of an injunction is justified to prevent harm from occurring; "proof that actual, substantial, and positive injury already has occurred is not required." *Id.*, citing *Oregon State Bar v. Wright*, 280 Or. 693, 700, 573 P.2d 283 (1977) (enjoining unlawful practice of law based on potential harm to public); *State ex rel. Reed v. Kuzirian*, 228 Or. 619, 626, 365 P.2d 1046 (1961)( enjoining unlawful practice of optometry based on potential harm to the public; *Tooker v. Feinstein,* 131 Or. App. 684, 690, 886 P.2d 1051 (1994), *adhered to as modified,* 133 Or. App. 107, 889 P.2d 1356, *rev. den.,* 321 Or. 94, 893 P.2d 540 (1995) ("[w]e certainly have the authority to enjoin the construction of a structure that violates a city ordinance").

In addition, ORS 30.315(1) specifically authorizes an incorporated city to maintain civil proceedings "to enforce requirements or prohibitions of its ordinances or resolutions when it

//////

//////

//////

//////

Page 8 –    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

seeks:  * * * * * (d) To enjoin continuance of a violation that has existed for 10 days or more;[6] or (e) To enjoin further commission of a violation that otherwise may result in additional violations of the same or related penal provisions affecting the public morals, health or safety."[7]

      B.    <u>The City Meets the Standards for a Temporary Restraining Order or Preliminary Injunction</u>

As previously noted, the safety and reliability of vehicles for-hire are matters of public concern and the regulation of such vehicles is an essential government function which the state has entrusted to cities and counties.  ORS 221.485-495.  The City has adopted regulations of private for-hire vehicles for the protection of the public.  PCC Chapter 16.40.  Those regulations have many health and safety components, and apply to all Private For-Hire Transportation companies, vehicles and drivers conducting business in the City, whether or not legally permitted.  PCC 16.40.020.[8]

It is undisputed that Uber and its drivers are "conducting business" in the City of Portland within the meaning PCC Chapter 16.40,[9] albeit without securing the permits required by that

//////

//////

---

[6] Uber began violating the City's regulations by operating for-hire transportation services without driver and company permits on Friday, December 5, 2014.  (Dufay Aff., ¶ 3; Wiggins Decl., Ex. A.)  While the City hopes that Uber will have ceased violating the City's regulations by December 15, 2014, Uber's actions indicate the contrary and bespeak intention to continue and expand its unpermitted and unlawful operations in Portland.  (*See. e.g.,* Dufay Aff., Ex. C; Khoshbin Decl., Ex. A.).

[7] Violations of the permit requirements as well as many of the other regulations of PCC Chapter 16.40 are penal in nature.  PCC 16.40.560 (Criminal Penalties).

[8] Among the City's regulations are those pertaining to driver permitting, background checks, conduct and maximum work hours; the renewal of company permits; insurance requirements; financial information; reporting obligations; vehicle inspection; and the licensing and maintenance of vehicles and required safety equipment.  *See, e.g.,* PCC 16.40.090-170.  The City also requires that 20% of a company's taxicabs be wheelchair accessible.  PCC 16.40.300.

[9] "'Conduct[ing] Business' means operating a for-hire vehicle or company, receiving money or other compensation from the use of a for-hire vehicle, causing or allowing another person to do the same, or advertising the same."  PCC 16.40.030 J.

Page  9  –   PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

chapter.[10]  (Dufay Aff., ¶¶ 5, 6, 7, 9, 10, 12, 15, 20, 43, 44; Baker Decl., ¶¶ 2-18; England Aff., ¶¶ 11-15.)  The State of Oregon has expressly delegated to the City the authority to regulate private for-hire transportation to protect the public health, safety and welfare.  The City has done so via the regulatory scheme contained in Portland City Code Chapter 16.40, which requires, inter alia, company and driver permits.  Uber is failing and refusing to comply with those regulations, without any legal justification.  As a result, the City's likelihood of success on the merits is without question.

Uber's operations in violation of the City's regulations pose an immediate, real and substantial threat to the public; including but not limited to, the fact that each passenger Uber diverts is being exposed to a risk of harm from drivers who do not have lawful commercial licenses or commercial insurance, are screened only by Uber and not by government local authorities, and may not be compliant with City Code safety limitations on driving hours in a 24-hour period.  (Dufay Aff., ¶¶ 20, 21, 48, 49, 50, 51, 52, 56.)  Passengers are further forced by Uber into giving a waiver from any and all liability, damages, jury trial and other important rights as a condition of Uber terms of service.  Id.  The public is unwittingly deprived of the benefits and protections of Portland's City Code and Administrative Rules by virtue of the fact that Uber willfully ignores such.  Id. (See also; Reeve Aff., Exhibit I, Complaint filed in San Francisco County Superior Court alleging violations of consumer protection laws.)

Given the threat posed by Uber's failure to comply with the for-hire transportation regulations which exist precisely to avoid the risk of harm to the public, a restraining order or injunctive relief is appropriate.  As the Ninth Circuit has noted, the higher the demonstrated

---

[10] And, it is clear that Uber's refusal to comply is a profit-motivated business decision.  Brooke Steger, General Manager of Uber Technologies, Inc. for the Pacific Northwest, has submitted a declaration to this Court claiming that the amount in controversy in this case meets the jurisdictional requisite because were Uber required to comply with the City's Private for-hire Transportation regulations and obtain the required licenses and permits, "that would cost in excess of $100,000."  (December 7, 2014, Declaration of Brooke Steger in Support of Defendants' Notice of Removal at para. 3, Doc. 2.)

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

likelihood of success on the merits, the lower the required degree of irreparable harm needed for an injunction, and vice versa. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005) (noting that the required degree of irreparable harm which must be demonstrated for an injunction increases as the probability of success decreases because "[t]hey are not separate tests but rather outer reaches of a single continuum").

Where, as here, it is undisputed that a party engaging in the business of providing commercial services to the public has failed to comply with regulations intended to protect the public, an injunction or restraining order is appropriate. *Josephine County, supra,* 163 Or. App. at 337 (where county showed that defendant had allowed members of public to stay in his tree houses when tree houses had not been completely safety tested for structural integrity, horizontal stress loading and the like, as required by state and local regulations, injunction was appropriate even without proof that actual, substantial and positive injury had already resulted).

## III.    Conclusion

For the foregoing reasons, plaintiff's motion for a temporary restraining order or preliminary injunction should be granted.

Dated:  December 10, 2014.

Respectfully submitted,

*s/ Tracy Reeve*

TRACY REEVE, OSB # 891123
City Attorney
Email:  Tracy.Reeve@portlandoregon.gov
J. SCOTT MOEDE, OSB #934816
Chief Deputy City Attorney
Email:  Scott.Moede@portlandoregon.gov
KENNETH A. McGAIR, OSB #990148
Senior Deputy City Attorney
Email:  Ken.McGair@portlandoregon.gov
Telephone: (503) 823-4047
Of Attorneys for Plaintiff

Page  11  –   PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
                PRELIMINARY INJUNCTION