TRACY REEVE, Oregon State Bar ID Number 891123
City Attorney
Email:  Tracy.Reeve@portlandoregon.gov
J. SCOTT MOEDE, Oregon State Bar ID Number 934816
Chief Deputy City Attorney
Email:  Scott.Moede@portlandoregon.gov
Kenneth A. McGair, Oregon State Bar ID Number 990148
Senior Deputy City Attorney
Email:  Ken.McGair@portlandoregon.gov
Office of City Attorney
1221 SW Fourth Avenue, Room 430
Portland, OR  97204
Tele:  503-823-4047
Fax:  503-823-3089
*Of Attorneys for Plaintiff City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **CITY OF PORTLAND,** a municipal corporation of the State of Oregon, | **3:14-cv-01958-SI** |
| **PLAINTIFF,** | **AFFIDAVIT OF FRANK DUFAY** (In Support of Plaintiff's Motion for Remand or, In the Alternative, Motion for a Temporary Restraining Order and Preliminary Injunction) |
| v. | |
| **UBER TECHNOLOGIES, INC.,** a Delaware corporation, and **RASIER, LLC,** its wholly owned subsidiary**,** | |
| **DEFENDANTS.** | |

STATE OF OREGON)
              ) ss.
County of Multnomah)

I, FRANK DUFAY, being first duly sworn, state:

1.      I am employed by the City of Portland, Oregon, as the Private for-hire Transportation Manager, with the Offstreet Parking and Regulatory Division of the City of Portland's Bureau of Transportation.  I am responsible for enforcement of Chapter 16.40 of the Portland City Code (Private for-hire Transportation) and accompanying Regulations.

Page  1  –   AFFIDAVIT OF FRANK DUFAY

2.      I make this affidavit in support of Plaintiff's Motion for Remand or, In the Alternative, Motion for a Temporary Restraining Order and Preliminary Injunction.

3.      I am aware that Uber Technologies, Inc. and /or affiliated entities ("Uber") declared an intent to commence operation in Portland, Oregon, on December 5, 2014.  Uber began operating at 5:00 p.m. on that date.  I have personal knowledge that Uber began arranging, facilitating, and/or providing vehicular transportation for compensation the evening of December 5, 2014, within the City of Portland, Oregon, in conjunction with driver/partners as I personally observed its application and drivers operating through its uberX platform.

4.      The provisions of Chapter 16.40 require that all private for-hire companies, drivers and vehicles must have permits.

5.      To date, no company with the name Uber Technologies, Inc. nor Rasier, LLC has applied for a permit to provide vehicular transportation for compensation.

6.      To date, there have been no applications for permits for vehicles affiliated with Uber Technologies, Inc. nor Rasier, LLC to provide vehicular transportation for compensation.

7.      To date, no drivers have applied for permits affiliated with Uber Technologies, Inc. nor Rasier, LLC to provide vehicular transportation for compensation.

8.      Specifically, the requirements of Chapter 16.40 – along with any penalties assessed for violations---apply to all for-hire transportation companies, vehicles and drivers, whether legally and validly permitted or not.  PCC 16.40.020 A.  It is not a defense to any regulatory action (including penalties and fines) to assert that the City cannot act because the driver, company or vehicle does not possess a valid City-issued permit, decal or taxiplate.  PCC 16.40.020 B.

9.      Specifically, under Chapter 16.40, no person may drive a for-hire transportation vehicle without a valid current for-hire transportation driver's permit issued under Chapter 16.40. PCC 16.40.090 A.  Uber has contracted drivers to drive for-hire transportation vehicles without

Page  2  –    AFFIDAVIT OF FRANK DUFAY

requiring such drivers to obtain valid, current for-hire transportation driver's permits and Uber drivers have failed to obtain such permits.

10.     Again, Uber began illegally operating for-hire vehicular transportation for compensation through its uberX and/or Rasier, LLC platform in the City of Portland on the evening of December 5, 2014.  To date, neither Uber nor any of its contracted drivers have applied for, or been granted any company, driver or vehicle permits to operate within the City of Portland as required by Chapter 16.40 of the Portland City Code.  I have personally observed the following examples outlined in paragraphs 11-17, below.

11.     On December 6, 2014, I used an iphone and the Uber application to hail an Uber driver to the location of Morton's Restaurant located at 213 SW Clay Street in Portland, Oregon 97201 at approximately 7:27 p.m.

12.     The driver picked me up in a Prius sedan.  The Prius did not have any of the Chapter 16.40 required taxicab or LPT requirements posted or displayed.

13.     The driver took me to the Airport Embassy Suites located at 7900 NE 82nd Avenue, Portland, Oregon 97220.  The trip lasted about 30 minutes.

14.     On December 6, 2014, I again used an iphone and the Uber application to hail an Uber driver to the location of the Airport Embassy Suites.

15.     The driver picked me up in a sedan.  The sedan did not have any of the Chapter 16.40 required taxicab or LPT requirements posted or displayed.  My receipt lists the address as "Portland International Airport, 8155 Northeast Air Cargo Road, Portland, OR."

16.     The driver took me to the Veritable Quandry restaurant in Portland.  The address there is 1220 SW 1st Avenue, Portland, Oregon 97204.  The address listed on my receipt is "1201-1221 Southwest 1st Avenue, Portland, OR."

17.     My receipt for the two rides is attached as Exhibit A.

//////

Page  3  –    AFFIDAVIT OF FRANK DUFAY

18.     Portland City Code Chapter 16.40 and the corresponding Administrative Rules promulgated by the Private For-Hire Transportation Board of Review regulate Private For-Hire Transportation within the City of Portland.

19.     Private For-Hire Transportation is defined as "providing vehicular, horse-drawn carriage or pedicab transportation for compensation of any kind within the Portland City Limits." PCC 16.40.030 HH.

20.     Under Chapter 16.40, no person may drive a for-hire transportation vehicle without a valid current for-hire transportation driver's permit issued under Chapter 16.40.  PCC 16.40.090 A.  Uber has contracted drivers to drive for-hire transportation vehicles without requiring such drivers to obtain valid, current for-hire transportation driver's permits and Uber drivers have failed to obtain such permits.

21.     In addition, all for-hire transportation companies are required to obtain a permit to operate.  PCC 16.40.020 A, PCC 16.40.130 A, and PCC 16.40.150 A.  All for-hire transportation companies must also obtain, comply with and maintain minimum levels of insurance to protect the public.  PCC 16.40.410.

22.     The regulations in Chapter 16.40 of the Portland City Code make a distinction between Limited Passenger Transportation (LPT) vehicles (and companies) and Taxicabs (and Taxicab Companies) which are specifically excluded from the LPT category and regulatory scheme.

23.     A Taxicab Company is "any entity operating taxicabs other than as a driver and regardless of whether the vehicles so operated are owned by the company, leased, or owned by individual members of the company."  PCC 16.40.030 NN.

24.     A Taxicab is "any vehicle that carries passengers for-hire where the destination and route traveled may be controlled by a passenger and the fare is calculated on the basis of an initial fee, distance traveled, waiting time, or any combination thereof."  PCC 16.40.030 PP.

Page  4  –    AFFIDAVIT OF FRANK DUFAY

25.     Limited Passenger Transportation (LPT) means "providing for-hire transportation services with non-motorized vehicles or motorized vehicles other than taxicabs.  LPTs include, but are not limited to, horse-drawn carriages, pedicabs, executive sedans, limousines, shuttles and SATs."  PCC 16.40.030 W.

26.     A Limited Passenger Transportation Company means "a for-hire transportation company other than a taxi company."  PCC 16.40.030 V.

27.     To operate means "driving a for-hire vehicle, using a for-hire vehicle to conduct a business, receiving money from the use of a for-hire vehicle, or causing or allowing another person to do the same."  PCC 16.40.030 Y.

28.     Effective December 5, 2014, Uber operated private for-hire transportation services in the City of Portland.  In addition to the rides obtained on December 6, 2014, on December 8, 2014, the Portland Bureau of Transportation ("PBOT") confirmed that Uber's website lists the uberX service available in Portland for a base fare of $1.50, plus $.30 per minute, plus $1.55 per mile with a $1.00 per ride "safe ride fee."  Based upon my experience, Uber also applies an additional "surge pricing" model during times of peak demand. Additionally, the Uber application showed cars available on the evening of December 5, 2014, and continues to show cars and drivers available to provide for-hire transportation within the City of Portland as of the date of this affidavit.  Defendant Uber Technologies, Inc. is a technology company and defendant Rasier, LLC is its wholly owned subsidiary (hereafter collectively "Uber").  Uber offers a smartphone based application which enables potential passengers to connect with Uber drivers for hire.[1]  Members of the public can download the application and register with Uber by entering certain identifying information including a credit card number.  Potential passengers activate the application when they wish to access private for-hire transportation services.  Once the application is activated, the potential passenger enters her

[1] Uber solicits and contracts with these drivers.  From November 4, 2014, through December 8, 2014, Craigslist for the Portland area showed 677 Uber ads for drivers.  (Reeve Aff., ¶9, Ex. G.)

Page  5  –    AFFIDAVIT OF FRANK DUFAY

location and the application finds one or more Uber drivers within a certain radius.  The potential

passenger can then request that an Uber driver pick her up at that location.  Uber drivers also use

smartphones (issued to the drivers by Uber) which notify the driver when a potential passenger

wishes to access for-hire transportation.  The driver accepts the request and is then effectively

dispatched via the software platform to the address of the passenger.  The passenger is sent a

picture of the driver, along with a picture of the vehicle en route and its license number.

Payment is made through the Uber application and Uber receives a percentage of the payment

for the for-hire transportation.

       29.    Based upon my observations from the rides I obtained and my research, Uber also

is in violation of the following civil and criminal provisions of Chapter 16.40.

       a.    <u>As a Taxicab Company</u>

- 16.40.150 Taxicab Company Permits Required − Application Process & Requirements.
- 16.40.190 LPT Decals and Taxiplates Required; Application Process & Requirements.
- 16.40.220 Vehicle Decal and Taxiplate Issuance or Denial.
- 16.40.270 Minimum Standards of Service for Taxicab Companies.
- 16.40.280 Taxicab Digital Security Camera Systems.
- 16.40.290 Taxicab Fare Rates.
- 16.40.300 Wheelchair Accessible Taxicabs.
- 16.40.310 Taximeter Requirements.
- 16.40.320 Required Taxicab Equipment.
- 16.40.330 Identification of Taxicab Vehicles.
- 16.40.410 LPT and Taxi Insurance Requirements.
- 16.40.450 Limousine, Executive Sedan and Taxi Logs Required.
- 16.40.500 Compliance with Federal, State and Local Laws.
- 16.40.560 Criminal Penalties.

and/or

       b.    <u>As Limited Passenger Transportation Vehicle</u>

- 16.40.090 LPT and Taxi Driver Permits Required – Application Process & Requirements.
- 16.40.130 LPT Company Permits Required – Application Process & Requirements.
- 16.40.190 LPT Decals and Taxiplates Required; Application Process & Requirements.
- 16.40.220 Vehicle Decal and Taxiplate Issuance or Denial.

Page  6  −    AFFIDAVIT OF FRANK DUFAY

- 16.40.410 LPT and Taxi Insurance Requirements.
- 16.40.450 Limousine, Executive Sedan and Taxi Logs Required.
- 16.40.500 Compliance with Federal, State and Local Laws.
- 16.40.560 Criminal Penalties.

30.     In accordance with the provisions listed in the paragraph immediately above, Chapter 16.40 of the Portland City Code subjects LPT Companies and LPT vehicles to a number of general regulations that are also applicable to Taxicab Companies and Taxicabs.  Both LPT and Taxicabs (vehicles and companies) are generally subject to the same treatment with regard to driver permitting, conduct and maximum hours, the renewal of company permits, insurance requirements, financial information, reporting obligations, vehicle inspection and the licensing and maintenance of vehicles used by the companies.  PCC 16.40.090 through 16.40.170.

31.     Taxicab Companies must track the date and time of the initial reservation, and the initial and destination addresses.  PCC 16.40.450 C.

32.     LPT Companies must track the customer name, the passenger name if different from the customer name, the date and time of the initial reservation, the date, start and end times of the trip, the initial and destination addresses, and the fare amount paid.  PCC 16.40.540 B.

33.     In addition to the requirements applicable to LPT Companies and vehicles, Taxicab Companies and Taxicabs are subject to regulations including:

a.      Having a dispatch system in operation 24 hours per day capable of providing prompt service.

b.      Acceptance of any request for taxicab service received from any location within the City.

c.      Service city-wide, 24 hours per day, 7 days a week.

d.      Having no more than 65% of the company's permitted vehicles within a one mile radius of the Portland International Airport at any given time.

e.      The company must have a minimum fleet of 15 taxicabs.

//////

Page  7  –    AFFIDAVIT OF FRANK DUFAY

      f.      At least two-thirds of the company's permitted fleet must be utilized and in service at all times.

      g.      Digital security cameras are required in all taxicabs.

      h.      Taxicabs are subject to maximum rates set forth inby Portland City Code currently set at $2.50 initial charge for one passenger and $1.00 for each additional passenger, a waiting charge of $30.00 per hour, and no more than $2.60 per mile traveled.

      i.      At least 20% of a taxicab company's fleet must be wheelchair accessible.

      j.      A taxicab must limit the hours its drivers are on duty to no more than 14 hours in a 24-hour period.

      k.      Each taxicab must be painted a unique color and display on both sides of each taxicab the full name of the company, the taxi number, the company telephone number and the word "taxi," "cab," or "taxicab."

PCC 16.40.270 through 16.40.330.

34.      LPT Companies engaged in limousine or executive sedan services are also subject to a $50.00 minimum trip fare between Portland's downtown core and/or the Amtrak station and the Portland International Airport.  The minimum rates are set in the Administrative Rules.  PCC 16.40.480 A and 16.40.480-1.  The minimum flat rate currently set by Administrative Rule is $50.00.

35.      Portland City Code also requires limousine and executive sedan services must be at 35% higher than the prevailing taxicab rates for the same route.  PCC 16.40.480 B.

36.      All limousine and executive sedan service must be provided on a prearranged basis.  Prearranged is defined in Administrative Rule and means that 60 minutes must pass between the time that a reservation is made and the time that the customer is transported.  PCC 16.40.460 A, 16.40.460-1.

Page 8 –    AFFIDAVIT OF FRANK DUFAY

37.    Although Uber effectively dispatches drivers to pick up the same passengers as taxicabs and LPT vehicles, Uber's drivers do not comply with the requirements set by the City of Portland.

38.    Uber drivers and companies violating City Code are subject to potential civil and criminal penalties.  PCC 16.40.530 and 16.40.560.

39.    Civil penalties are provided in a table at PCC 16.40.540 which ranges in several thousands of dollars.  Criminal penalties are also provided in PCC 16.40.560 with a fine of $1,000 or imprisonment for not more than six months or both.

40.    As outlined above, Uber's drivers similarly do not conform with Portland City Code sections.

41.    In Portland, all for-hire vehicles must pass annual inspections showing that they are safe, clean and comfortable, tasks which the drivers themselves typically must complete although they do not earn fare revenue.  Similarly, drivers are prohibited from providing taxi for-hire service unless their vehicles are equipped with a digital security camera, and fare meter. The company is required to carry commercial liability insurance and vehicle insurance.  Upon information and belief, the vehicles dispatched by Uber do not comply with these requirements, avoiding the costs imposed on drivers and other companies.  (See information from Uber's website attached hereto as Exhibit B.)

42.    While Uber presently employs different terminology in their promotional materials to describe their services than do other Taxicab and LPT providers, the services provided are nonetheless private for-hire transportation for compensation operated in contravention of applicable legal requirements:

a.    Uber effectively dispatches for-hire passenger transportation services, for compensation over the roads of the City of Portland.

//////

Page  9  –    AFFIDAVIT OF FRANK DUFAY

b.      Uber does not hold a valid company permit for either a Taxicab Company or a LPT Company, nor are they permitted in any jurisdiction as a Taxicab or LPT service.

c.      All prospective customers of Uber must first download a Smart Phone application "app" and enter into an online agreement under terms dictated by Uber.  Those terms include a waiver of any and all liability to Uber.

d.      The customer provides credit card information to Uber.

e.      Customers hail a car through the "app" instead of a human dispatcher.  Uber charges for service are calculated by the "app" software, based on time and distance and billed to the customer's credit card through the "app" rather than through a certified taxi meter.

f.      Drivers do not directly collect a fare from the customer.  Instead, Uber charges the fare to the customer's credit card through its "app."  Uber collects a portion of the total charges (including tip) and pays the balance to the driver.

g.      Uber drivers are drawn from the general public and use personal vehicles which are personally insured.  Uber does not require Uber drivers to purchase commercial auto insurance or have local business licenses or permits.

h.      Uber does not require its drivers to comply with for-hire passenger carrier regulations, either state or local, including City of Portland regulations.  Drivers are screened by Uber based on their own criteria, not through City of Portland employees.

i.      Unlike licensed Taxicab Company and LPT Companies lawfully permitted to dispatch taxicabs and LPT vehicles to passengers which must satisfy all applicable Code requirements, Uber exempts itself from any duty to provide fair and equal service.  Uber only dispatches drivers to customers who can pay by

Page  10  –   AFFIDAVIT OF FRANK DUFAY

credit card and have used its internet application or website to request a vehicle. A phone call request from a customer is not accepted, nor is cash. Uber admits it seeks to serve wealthy, technology-connected passengers, leaving those with less means in technology to be served by the regulated taxicab and LPT drivers.

43.     Currently Uber is illegally operating for-hire transportation services by providing vehicular transportation for compensation without a valid permit issued by the City of Portland or any permit issued by any local jurisdiction to authorize Taxicab and LPT services nor complying with the numerous additional regulations outlined above. In so doing, Uber is willfully refusing to comply with City of Portland Code and regulations enacted to protect people of the City of Portland.

44.     Neither Uber nor any of its driver/partners has applied for, or currently possess, the required City of Portland permits to provide for-hire transportation in the City of Portland.

45.     To my knowledge Uber has not complied with the other requirements of PCC Chapter 16.40, which are intended to address public safety and welfare.

46.     In fact, neither Uber nor any representative of Uber has made contact with me since September 2013.

47.     To the best of my knowledge (and based upon Uber's own recent public declarations) with respect to vehicle safety inspection prior to bringing a vehicle into service, Uber requires only a superficial inspection that falls well short of the certified inspection required by the City.

48.     Uber requires drivers to have personal auto insurance, which may not offer protection for commercial operation of a vehicle. Moreover, insurance information posted by Uber reflects a gap in insurance coverage when the app is on and a driver is available and not on a trip. (See information from Uber's website attached hereto as Exhibit B.)

//////

Page  11  –   AFFIDAVIT OF FRANK DUFAY

49.     For-hire drivers are required to undergo driver background investigations. Depending on circumstances, this can also include FBI background information.  Uber reportedly uses a less comprehensive private background service, apparently not fingerprint-based, and makes its own decisions about who to clear.  Source: http://pando.com/2014/01/06/exclusive-uber-driver-accused-of-assault-passed-zero-tolerance-background-check-despite-criminal -history/.

50.     The San Francisco Chronical has reported that California District Attorneys have declared Uber's inadequate criminal background checks and other business practices "a continuing threat to consumers and the public."  http://www.sfgate.com/bayarea/article/S-F-L-A-threaten-Uber-Lyft-Sidecar-with-5781328.php.

51.     City Code limits driving hours to 14 hours in a 24-hour period.  There is no indication that Uber limits driver hours, and Uber does not consider driving time without a passenger to be on-duty.

52.     Uber's claimed insurance provider has not been approved by the Oregon Insurance Commissioner.  (See Exhibit D, Notice from Oregon Insurance Commissioner issued in September 2014.)

53.     Neither Uber nor any driver is known to have a business license in Portland.

54.     An injunction would be appropriate because Uber is illegally providing vehicular transportation for compensation without complying with numerous provisions of Portland City Code Chapter 16.40 designed to protect the public health, safety and welfare as outlined above. This list of statutory violations outlined above is not exclusive, and plaintiff reserves the right to rely on other and further violations of the law which are discovered in the course of discovery and investigation in this matter.

55.     Uber's above-listed operation poses an immediate, real and substantial violation of the Portland City Code and accompanying Administrative Rules.

Page  12 –   AFFIDAVIT OF FRANK DUFAY

56.    Uber's Operations pose an immediate, real and substantial threat to the public; including but not limited to, the fact that each passenger Uber diverts is being exposed to a risk of harm from drivers who do not have lawful commercial licenses or commercial insurance, and are screened only by Uber and not by local authorities.  Passengers are further forced by Uber into giving a waiver from any and all liability, damages, jury trial and other important rights as a condition of Uber terms of service.  The public is unwittingly deprived of the benefits and protections of Portland's City Code and Administrative Rules by virtue of the fact that Uber willfully ignores such laws and disclaims any responsibility.

57.    Plaintiff seeks an injunction immediately enjoining Uber from conducting business (as defined in Portland City Code section 16.40.030 J.) or operating (as defined in Portland City Code section 16.40.030 Y.) within the City of Portland, Oregon, including through the use of the Uber smartphone application, and including contracting with unpermitted drivers, unless and until Uber comes into compliance with the permit, insurance and other requirements of Portland City Code Chapter 16.40 (Private for Hire Transportation Regulations).


_____*s/ Frank Dufay*_____
Frank Dufay

SUBSCRIBED AND SWORN TO before me this 10th day of December, 2014, by Frank Dufay.


_____*s/ Jody L. Thoman*_____
Notary Public for Oregon
My commission expires:  10/29/2016


Page  13  –   AFFIDAVIT OF FRANK DUFAY