Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW 5th Ave, Ste
Portland, Oregon 97201-5610
Telephone: 503-778-5328
Facsimile: 503-778-5299

Harry Korrell, WSBA # 23173
harrykorrell@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 3rd Ave, Ste 2200
Seattle, WA 98101
Telephone: 206-757-8080
Facsimile: 206-757-7080
*Pro-hac vice application pending*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

CITY OF PORTLAND, a municipal corporation,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., a Delaware corporation, and RASIER, LLC, its wholly owned subsidiary,

Defendants.

Case No. 3:14-cv-01958-SI

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## I. INTRODUCTION

Defendant Uber Technologies, Inc. is a technology company, not a taxicab or for-hire transportation company. Uber has developed a smartphone and internet software application (an "app") that allows individuals who have joined Uber's on-line community to use their smartphones to connect with third-party drivers who have a license to use Uber's app. Uber's

Page 1 – Defendants' Opposition to Plaintiff's Motion to Remand

DWT 25522228v6 0096932-000015

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

wholly owned subsidiary, Rasier, LLC, makes the Uber app available to drivers and potential riders.[1] Uber does not own, operate, or dispatch taxicabs or any other for-hire vehicles.

Yet the City of Portland contends Uber must comply with its "Taxicab" and "Limited Passenger Transportation" (LPT) regulations (Portland City Code 16.40), or be barred from engaging in business in the City. The City of Portland thus seeks to preliminarily and permanently enjoin Uber from offering its app to Portland citizens. Uber disagrees that the Portland City Code applies to the type of service it offers, and disagrees its recent launch in Portland is illegal or otherwise wrongful. Indeed, not only does Uber's service fall outside the scope of the Code, but also its service provides a valuable, popular, and safe alternative for Portland citizens. Uber has been trying to work with the City of Portland for over a year and a half now to develop a new set of regulations that would cover companies that, like Uber, provide internet and smartphone applications connecting riders with third-party drivers. Numerous other jurisdictions—including the City of Seattle—have done just this, preserving a desired alternative for their citizens. The City of Portland, however, has refused.

The Court should deny the City of Portland's motion to remand, which it calls a Motion to Determine Subject Matter Jurisdiction. The parties in this case dispute whether the Code's taxi and LPT regulations apply to Uber and whether Uber may offer its app to Portland residents without obtaining permits required of taxicab or LPT companies and otherwise complying with the regulations applicable to those kinds of businesses. The object of this litigation, then, is Uber's right to conduct its business in Portland free from those taxi and LPT regulations. The value of Uber's right to offer its services in Portland greatly exceeds the jurisdictional threshold amount of $75,000, whether calculated based on either the cost of complying with an injunction prohibiting Uber from operating in Portland (lost profits) or the cost of changing its business and

[1] This opposition, like the City's Complaint, refers to Uber and Rasier collectively as "Uber."

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

obtaining permits so as to satisfy the City's demand that it comply with the Code and related regulations.

The City admits Uber need only satisfy a preponderance of the evidence standard and that the amount in controversy is the "value of the object of the litigation," but it contends Uber cannot count toward the jurisdictional requirement the profits it would lose if enjoined. However, courts have long-recognized a removing defendant may include profits lost due to an injunction in calculating the amount in controversy. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), *abrogated on other grounds as stated in United Food & Comm. Workers Union Local 751 v. Brown Grp. Inc.*, 517 U.S. 544, 116 S.Ct. 1529 (1996). The City's arguments lack merit, and the Court should deny the motion to remand.

## II. FACTUAL BACKGROUND

### A. Uber Technologies, Inc., and Its Subsidiary Rasier, LLC

Uber is a software company that developed a cutting-edge internet software application for use on smartphones. The app allows members of Uber's on-line community to request rides from third-party drivers. These drivers contract with Rasier to purchase a license to use the Uber app. Uber uses well-rated, independent background check company to perform comprehensive background checks of these third-party drivers, uses national auto service companies for vehicle inspections, and provides commercial insurance of $1 million while a passenger is on a ride (as well as $1 million in uninsured/underinsured coverage).[2] By downloading the app, creating an account, agreeing to Uber's Terms and Conditions, and then clicking on the app, users may request a ride from these independent third-party drivers. Uber does not provide any

[2] *See* https://www.uber.com/safety (describing Uber's background checks, which include screening drivers against federal and county court records, a multi-state criminal database, a national sex offender registry screen, and motor vehicle records, among other background checks) and http://blog.uber.com/uberXridesharinginsurance (describing insurance provided).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

transportation. It does not own or operate any vehicles, and it does not control when third-party drivers use the app or what rides they accept.

Uber currently offers its service in over 245 cities worldwide, including 150 U.S. cities.[3] In Oregon, Uber's app is available in Salem and Eugene and in the communities surrounding Portland. For about five months, Uber has offered its app in Vancouver, including for rides into Portland, without complaint from the City of Portland. For about three weeks, Uber has offered its app in Beaverton, Gresham, Hillsboro, and Tigard, for rides bringing users from these communities into Portland as well—again without complaint from the City of Portland. On December 5, responding to increasing demand by would-be riders and drivers, Uber started offering its app service in the City of Portland to allow riders to request rides that ***originate*** (as opposed to just terminate) in Portland.

**B. The City's Decision to Apply the Taxicab and LPT Regulations to Uber**

Uber started conversations with the City about entering the Portland market over a year and a half ago. Then, the City took the position Uber could not offer its app in Portland without a taxicab or for-hire company permit, and Uber and the third-party drivers would have to change their business models to become more like taxis or for-hire transportation companies. Uber disagreed and asked the City to adopt regulations that expressly recognize and regulate appropriately its new kind of business operation—as other jurisdictions have done. So far, the City has refused. When Uber started allowing riders to use its app to find rides that originate in (not just end in) the City, the City made clear it intended to shut Uber down. Not surprisingly, then, the City filed this lawsuit, claiming Uber is illegally operating either a Taxicab Company or an LPT Company without the permits required by Chapter 16.40 of the Portland City Code, *e.g.*, Dkt. # 1-1 at 4, and has violated various civil and criminal provisions of Chapter 16.40.

The City seeks, among other relief, a preliminary injunction prohibiting Uber from operating in the City of Portland unless it complies with the Code, and a permanent injunction

[3] *See* https://www.uber.com/cities.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

enjoining Uber from offering its app in Portland. Dkt. #1-1 at 15-16. On the same day, Uber removed this case to this court under 28 U.S.C. § 1332(a), the federal diversity jurisdiction statute. Dkt. #1. In support of Uber's Notice of Removal, the Seattle General Manager for Uber Technologies, Inc., overseeing operations in the Pacific Northwest, Brooke Steger, explained:

> 2. If Uber is prohibited from operating its business in the City of Portland, Uber would suffer significant lost profits. I am familiar with Uber's business and profits generally in Seattle, WA, Vancouver, WA, and in the communities surrounding Portland. Based on my experience in those cities and given the demand for Uber's services by Portland residents, interested drivers, and local businesses, the lost profits to Uber as a result of an injunction prohibiting Uber's business in Portland would certainly exceed $100,000.
>
> 3. If Uber were required to obtain licenses and permits and change its business so that it operated as if it were a Taxicab Company or a Limited Passenger Transportation Company in Portland, as described in and regulated by the Portland City Code, that would cost in excess of $100,000.

Dkt. #2 at 1-2 (Steger Declaration in Support of Notice of Removal).

In support of this opposition to the motion to remand, Ms. Steger further explains Uber calculated the cost of complying with the Code based on the number of third-party drivers it expects to have in Portland by the end of calendar year 2014 (less than three weeks from now), multiplied by the various fees the Code requires, such as the vehicle permit fee ($225) and the initial permit fees for taxi drivers ($200). Supplemental Declaration of Brooke Steger ("Supp. Steger Decl."), ¶ 3. The cost of paying these fees alone would exceed $75,000. *Id.* Ms. Steger further explains Uber calculated the income it would lose if the Court were to enter the requested injunction based on the income it generates in a similar market. Based on that fact, her experience running Uber's business in Seattle, her understanding of the demand for Uber's services by drivers and riders, and her experience overseeing Uber's services in the communities surrounding Portland, Ms. Steger projects an injunction banning Uber from entering the Portland market would cause lost profit of between $100,000 and $200,000. *Id.*



DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## III. ARGUMENT

Uber need only provide a "short and plain statement of the grounds for removal." *Janis v. Health Net, Inc.*, 472 Fed. Appx. 533, 534 (9th Cir. 2012) (citing 28 U.S.C. § 1446(a)). The parties agree Uber need only show the amount in controversy exceeds $75,000 by a preponderance of the evidence. The parties also agree that in a suit seeking equitable relief, such as this one, the Court measures the amount in controversy by the "value of the object of the litigation." *Hunt*, 432 U.S. at 347. And the parties agree that in such suits, the Court assesses the amount in controversy from the perspective of either party. *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). "[W]here the value of a plaintiff's potential recovery (in this case, a maximum of $3,500) is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *Id.*

### A. Uber Has Satisfied the Amount-in-Controversy Requirement.

Uber has satisfied the amount-in-controversy requirement because each of the cost of complying with the injunction and cost of complying with the Code and related regulations would exceed $75,000. Supp. Steger Decl. ¶¶ 3-4; Dkt. #2 ¶¶ 2-3 (Steger Declaration in Support of Notice of Removal).

#### 1. The Cost to Uber if it is Enjoined from Offering its App in Portland Would Exceed $75,000.

The City requests "a permanent injunction against defendant, enjoining it from operating a for-hire transportation company providing vehicular transportation for compensation in the City of Portland." Dkt. #1-1 at 16. The Ninth Circuit has made clear that where the "potential cost to the defendant of complying with the [requested] injunction exceeds [the jurisdictional] amount, that it . . . represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Co.*, 264 F.3d at 958.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Here, the permanent injunction would prohibit Uber from operating in Portland, which would cost Uber over $100,000 in lost profit before the end of the year. Supp. Steger Decl. ¶ 4; *see also* Dkt. #2 ¶ 2 (Steger Declaration in Support of Notice of Removal).[4] Courts consistently consider profits lost due to an injunction in evaluating whether the removing party satisfied the amount-in-controversy requirement. *See, e.g.*, *Hunt*, 432 U.S. at 347 (including lost profits in determining amount in controversy); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172-75 (C.D. Cal. 2008) (analyzing lost revenues in determining amount in controversy for injunction action); *Biotronik, Inc. v. St. Jude Med. S.C., Inc.*, 2012 WL 3264046, at *4-5 (D. Or. Aug. 5, 2012) (Aiken, C.J.) (including in amount-in-controversy determination the "value of the disputed accounts [and] sales revenues"). Because Uber has shown by a preponderance of the evidence that complying with an injunction barring it from Portland would cost it more than $75,000, Uber has satisfied the amount-in-controversy requirement.

**2. The Cost of Complying with the Regulations Would Exceed $75,000.**

The City's own cases also confirm that Uber has satisfied the amount-in-controversy requirement for the additional reason that the cost of complying with the City's Code and regulations would exceed $75,000. In *Hunt*, on which the City relies, *see* Motion at 3, Washington apple growers sought to invalidate a North Carolina labeling statute. The Court concluded "the object is the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the

[4] The City objects to Uber's evidence because it insists Uber's lost profits are really lost revenue. Motion at 5. Even if the City were right, lost revenue is sufficient for purposes of the amount in controversy. *Luna*, 575 F. Supp. 2d at 1172-75 (analyzing lost revenues in determining amount in controversy for injunction action); *Biotronik, Inc.*, 2012 WL 3264046, at *4-5 (including in amount-in-controversy determination the "value of the disputed accounts [and] sales revenues"). Moreover, the Steger Declaration in Support of Removal specified "profits" not revenue. Dkt. # 2 ¶ 2. Even if there were any ambiguity, which Uber does not concede, Ms. Steger's declaration in support of this opposition clarifies the lost profits to Uber of not providing its app service in Portland would exceed $100,000. Supp. Steger Decl. ¶ 4.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

challenged statute. The value of that right is ***measured by the losses that will follow from the statute's enforcement***." 432 U.S. at 347 (emphasis added). The Court explained that the losses flowing from the statute's enforcement ***included both the lost profits and the cost of complying*** with the statute. *Id.*

Numerous courts, including the U.S. Supreme Court in other decisions, have likewise held that in suits involving injunctive relief and the enforcement of government regulations, courts measure the amount in controversy based on the impact to the business of complying with the regulation at issue.

> In determining whether the requisite jurisdictional amount is in controversy, where it does not appear that the complainant is deprived of its license or is prevented by the regulation from prosecuting its business, the question is not the value or net worth of the business, but the value of the right to be free from the regulation, and this may be measured by the loss, if any, that would follow the enforcement of the rule prescribed.

*Kroger Grocery & Baking Co. v. Lutz*, 299 U.S. 300, 301, 57 S. Ct. 215, 81 L. Ed. 2d 51 (1936). *See also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 181, 56 S. Ct. 780, 80 L.Ed. 1135 (1936) ("The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed."); *Autotronic Sys., Inc. v. Coeur d'Alene*, 527 F.2d 106, 107 n.1 (9th Cir. 1975) ("Plaintiff has met the amount in controversy requirement by showing that the cost of compliance with the City's ordinance during the period of litigation would exceed $10,000. No allegation of lost profits is required." (internal citation omitted)).[5]

Here, as in *Hunt*, the object of the litigation is Uber's right to conduct its business affairs in the Portland market, free from interference from the disputed regulations. Under well-

[5] The City's complaint that "[w]hat defendant calls lost profits in this case are effectively the cost of doing business with local laws," Motion at 5, is thus misplaced. The Court may consider "[t]he cost of doing business with local laws" in measuring the amount in controversy. *See Kroger Grocery*, 299 U.S. at 301; *McNutt*, 298 U.S. at 181; *Autotronic Sys.*, 527 F.2d at 107 n.1.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

established law, the Court measures the value of that right by considering the losses Uber would suffer if the regulations were enforced—including, under *Hunt*, both lost profits and the cost of compliance.[6] Uber showed by a preponderance of the evidence (submitting the only evidence on the point) that complying with Portland's taxi and for-hire transportation regulations would cost it more than $100,000. Supp. Steger Decl. ¶ 3; *see also* Dkt. #2 ¶ 3 (Steger Declaration in Support of Notice of Removal). By showing the cost of complying with the regulations would exceed $75,000, Uber has satisfied the amount-in-controversy requirement. *See, e.g., Kroger Grocery*, 299 U.S. at 301 (court considers "the loss, if any, that would follow the enforcement of the rule prescribed").

**B. The Amount in Controversy Does Not Depend on Whether Uber's Losses Are "Recoverable" or "Illegal."**

Despite this well-settled law, the City argues "lost profits are not recoverable where the profits are derived from the defendant's own illegal activity." Motion at 5. But whether the losses are "recoverable" has no bearing on the amount-in-controversy inquiry, and whether profits are "illegal" is impossible to establish at (and is irrelevant to) the removal stage, as that is the central issue in the case.

***First***, the City provides no support for its proposition that the amount in controversy must be ***recoverable in the litigation***. Nor does such authority exist. To the contrary, in *Hunt* the Court considered "the losses that will follow from the statute's enforcement" even though the plaintiffs challenging the government regulation there did not seek to "recover" those lost profits or the cost of compliance as damages. 432 U.S. at 347. The Court should reject the City's unsupported and incorrect theory.

---

[6] It does not matter that the regulated party sought the injunction in *Hunt*, rather than the government, because in cases seeking equitable relief, the Court measures the amount in controversy from the perspective of either party. *In re Ford Motor Co.*, 264 F.3d at 958.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

***Second***, the City's characterization of Uber's losses as "illegal" lacks basis and assumes the conclusion of the litigation before it has begun. Again, the City does not cite a single case holding a court can characterize the amount in controversy as "legal" or "illegal" at the removal stage. Indeed, such a rule would make no sense, for it would require the Court to decide the case's ultimate conclusion immediately after the filing of the complaint. But courts do ***not*** determine the existence of diversity jurisdiction based on the merits of the case. Rather, "[f]ederal courts have limited jurisdictional power and, consequently, have a duty to confirm their subject matter jurisdiction over a particular case ***before*** reaching the merits of a dispute." *Donaldson v. Williams*, 2012 U.S. Dist. LEXIS 158642, *4 (D. Or. Sept. 6, 2012) (Sullivan, P.) (emphasis added); *see also Wallace v. Christensen*, 802 F.2d 1539, 1542 (9th Cir. 1986) (court must address and answer jurisdiction before reaching the merits).

For example, in *Hunt*, the Court concluded plaintiff satisfied the amount in controversy because it alleged the challenged law restricting labeling practices caused it sufficient economic injury. 432 U.S. at 347. The Court did ***not*** base this assessment on whether the law itself was or was not lawful. And in fact, the Court determined the amount-in-controversy requirement was met ***before*** any ruling on the legality of the challenged law. The Court's amount-in-controversy analysis focused solely on the losses the plaintiff asserted it suffered from the application of the law.

The City's efforts to distinguish *Luna*, 575 F. Supp. 2d at 1172-75, and *Biotronik, Inc.*, 2012 WL 3264046 at *4-5, do not advance its position. The City complains "neither of those cases addresses the legal principle that a business cannot profit from illegal activity." Motion at 5. The City's argument misses the point. Those cases do not address that principle because the principle has no bearing on the jurisdictional amount-in-controversy requirement. If the rule were as the City advocates, the courts in *Luna* and *Biotronik* would have had to determine, at the removal stage, whether the companies had violated the non-compete agreements at issue. Under the City's theory, if the companies had violated the non-competes, then their profits would be

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

"illegal," would not count towards the amounts in controversy, and the courts would lose jurisdiction. But again, courts do not analyze jurisdiction based on the strength of the merits.

This Court will ultimately decide whether Uber is "illegally" providing a service in Portland, as the City claims, or not, as Uber contends. The City cannot, at this early pleading and removal stage of the litigation, unilaterally determine that Uber's profits are "illegal" and therefore, not properly considered in determining whether diversity jurisdiction exists.

**C. Uber Established the Amount-in-Controversy Requirement by a Preponderance of the Evidence.**

Finally, contrary to the City's arguments otherwise, Uber established the amount in controversy by a preponderance of the evidence. Courts routinely find that a declaration submitted by a qualified individual suffices to meet the preponderance of the evidence standard, especially when, as here, that testimony remains unrebutted. *See, e.g.*, *Hemphill Chiropractic Clinic LLC v. Md. Cas. Co.*, No. C08-1365RAJ, 2008 WL 4621522 (W.D. Wash. Oct. 17, 2008).

For example, in *Hemphill Chiropractic*, defendant removed and provided a declaration of a claims adjuster, who testified the insurance company had already paid over $100,000 on a claim, and understood plaintiff to be seeking an additional amount over $75,000. *Id.* at *2. The adjuster "provided no details explaining how she arrived at this understanding, but there is no question that as the claims adjuster who handled MCC's claim, she is competent to come to such an understanding." *Id.* Plaintiff attacked the adjuster's specificity, but that "criticism [was] empty without evidence to support it." *Id.* "At the time [defendant] removed this action, the only evidence bearing on the amount-in-controversy was [the claims adjuster's] declaration. Absent contradictory evidence from [plaintiff], [defendant] satisfied its burden." *Id.*; *see also Watkins v. Vital Pharms., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013) (***undisputed*** declaration stating that company's amount of sales exceeded jurisdictional amount-in-controversy requirement sufficed); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008) (where

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

plaintiffs "offered nothing" to contradict the accuracy of the defendant's sworn affidavit, it could be used to establish a jurisdictional amount).

As with the claims adjuster in *Hemphill Chiropractic*, Ms. Steger is qualified to testify to the facts in her declaration and her testimony remains wholly unrebutted. She is the Seattle General Manager of Uber Technologies, Inc., overseeing operations the Pacific Northwest, and has knowledge of Uber's market, business, and profits in Seattle, WA, Vancouver, WA, and in the communities surrounding Portland. Supp. Steger Decl. ¶¶ 1, 4; Dkt. #2 ¶¶ 1-2 (Steger Declaration in Support of Notice of Removal). Her sworn affidavits are not "speculative"—she is intimately familiar with the workings of Uber's business, the demand in the communities Uber serves, and the potential impact of the City's regulations. Supp. Steger Decl. ¶¶ 1, 4; Dkt. #2 ¶¶ 1-3 (Steger Declaration in Support of Notice of Removal). In contrast, the City does not offer ***any*** evidence that Uber will ***not*** expend $100,000 to comply with the regulations, or will ***not*** lose $100,000 in income from complying with the City's requested injunction. Because Ms. Steger's well-founded declaration is the ***only*** evidence of the amount in controversy, Uber has established the amount by a preponderance of the evidence. *See Hemphill Chiropractic*, 2008 WL 4621522, at *2; *Watkins*, 720 F.3d at 1181; *Strawn*, 530 F.3d at 299.

The City relies on *Perez v. WinnCompanies, Inc.*, 2014 WL 5823064, at *8 (E.D. Cal. Nov. 10, 2014), but it has no bearing here. In *Perez*, the court found the statement "most punitive damage verdicts against corporations exceed $75,000" conclusory and insufficient. *Id.* Unlike the declarant there, Ms. Steger bases her testimony on her unique knowledge of Uber's business practices, the markets surrounding Portland, the market in Portland, and similar markets in which Uber provides service and provides competent evidence on the amount in controversy. Supp. Steger Decl. ¶¶ 1, 3-4; Dkt. #2 ¶¶ 1-3 (Steger Declaration in Support of Notice of Removal). Ms. Steger does not rely on general and abstract notions of the income "most companies" lose due to an injunction or compliance with government regulations.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny the City's motion to remand.

DATED this 11th day of December, 2014.

**DAVIS WRIGHT TREMAINE LLP**


By  s/ Gregory A. Chaimov
    Gregory A. Chaimov, OSB #822180
    Telephone: 503-241-2300
    Facsimile: 503-778-5299
    Email: gregorychaimov@dwt.com

    Harry Korrell
    Telephone:  206-757-8080
    Facsimile:  206-757-7080
    Email:  harrykorrell@dwt.com

    Attorneys for Defendants

Page 13 – Defendants' Opposition to Plaintiff's Motion to Remand

DWT 25522228v6 0096932-000015

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax